**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JAMES McCONNELL,**
**SUZANNE TATTAN**,

      Plaintiffs,

v.                                                        **No. 09-cv-00522 MCA/WPL**

**BOARD OF COUNTY COMMISSIONERS**
**FOR THE COUNTY OF RIO ARRIBA,**
**RIO ARRIBA COUNTY HOUSING AUTHORITY,**
**RIO ARRIBA COUNTY SHERIFF'S DEPARTMENT,**
**RHOADES ENVIRONMENTAL and RONALD K. RHOADES,**
**ELIAS CORIZ, ANGIE PACHECO, LORI LEYBA, and**
**JOHN/JANE DOE 1-5 in their individual capacities,**

      Defendants

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on: *Defendants Board of County Commissioners for the County of Rio Arriba, Rio Arriba County Sheriff's Department, and Elias Coriz's Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted*, filed June 17, 2009 (Doc. 14); on *Rio Arriba County Housing Authority's Motion to Dismiss*, filed August 24, 2009 (Doc. 39); on *Rhoades Environmental and Ronald K Rhoades' Motion to Dismiss*, filed October 7, 2009 (Doc. 58); on pro se Plaintiffs James McConnell's and Suzanne Tattan's *Motion to Amend Original Complaint and to Submit Supplemental Pleadings*, filed July 13, 2009 (Doc. 23); and on their *Motion to Make Changes to Proposed Amendments and Supplemental Pleadings*, filed September 1, 2009 (Doc. 41). Having considered the parties' arguments, the relevant law, and the record, the Court concludes that the motions to dismiss should be granted in part and denied in part and that the motions to amend should be granted in part and denied in part.

**I. LEGAL STANDARDS**

**A.     Motions to Dismiss**

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure in a § 1983 cause of action.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
>> the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S. Ct. at 1965.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (applying *Bell Atlantic Corp. v. Twombly* in a case brought under § 1983).  The Tenth Circuit emphasized that

> 'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Id.* (internal quotation marks, citation, and footnote omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atlantic v. Twombly*, 127 S. Ct.] at 1965 n. 3.  *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint

may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). *Twombly* was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10.  Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

The Third Circuit has noted, and we agree, that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context:  "Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case. . . ." *Phillips*, 515 F.3d at 231-32.  A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time.

* * * *

[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation." *Anderson*, 483 U.S. at 646 n. 6, 107 S.Ct. 3034; *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727.  Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S.Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Robbins*, 519 F.3d at 1248-49.  Thus, in cases in which government actors are also sued in their individual capacities and the plaintiff alleges violation of her constitutional rights, such as due-process rights, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (emphasis in original).

"The core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actionable constitutional violation." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007).  Because

McConnell and Tattan proceed pro se, the Court liberally construes their Complaint.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  They are still required, however, to make factual allegations to establish plausibility.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The court should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them.  *Id.* at 1951.  Then it "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949.

Because the Plaintiffs seek to amend their Complaint, the Court has considered the proposed amended pleadings in analyzing the motions to dismiss.

### B.     Motions to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A motion to add a party is governed by Fed. R. Civ. P. 15(a).**"** *Id.*

## II.   ALLEGATIONS IN THE COMPLAINTS.

The bulk of the Plaintiffs' Original Complaint regards alleged knowledge and actions or

inaction taken by the Rio Arriba Housing Authority ("RAHA")[1] through two of its employees, Defendant Angie Pacheco, who is its Executive Director, and Defendant Lori Leyba, its Housing Manager.  *See* Doc. 2, at 3 ¶¶ 11-12; *id.* at 4-7, ¶¶ 15-34.  The Plaintiffs allege that RAHA "is responsible for the training, supervision, acts, omissions, conduct, policies . . . patterns, practices, customs, and procedures of the public housing employees working in the scope of their duties." *Id.* at 3, ¶ 9.  The Plaintiffs contend that Leyba violated the federal Fair Housing Act in January 2009 by placing them in a housing unit that had mold, causing physical injury to them. *Id.* at 5-6, ¶¶ 23-32.  They contend that Leyba then retaliated against them on March 10, 2009 for reporting that they suspected that mold existed in their housing unit by sending them a letter threatening their eviction unless they provided information entitling them to the larger unit they had obtained in January 2009 by claiming that they were going to have foster children. *See id.* at 6, ¶ 33.  They contend that on May 26, 2009, "Pacheco, acting as representative for Defendant RAHA" sent an officer from the Rio Arriba County Sheriff's Department to their home to "witness an eviction" and to try to force them to remove a "Toxic Mold Home" sign that they had placed in front of the unit they rented. Doc. 2, p. 9 ¶ 43.

### A. Allegations against the Board and Coriz.

In the Original Complaint, the Plaintiffs made the following factual allegations regarding the Board and its chairman, Defendant Coriz:

> Defendant Rio Arriba Housing Authority (RAHA) is a public housing project . . . administered by the Defendant County.

Doc. 2, p. 3 ¶ 9.

---

[1] Although the parties have also called the "Rio Arriba Housing Authority" the "Rio Arriba County Housing Authority," the Court will denominate it with the initials "RAHA" for consistency.

> On . . . March 26, 2009, Plaintiffs requested to be heard at the Board meeting of
> Defendant RAHA and Defendant County.

Doc. 2, p. 7 ¶ 35.

> On May 12, 2009 Plaintiff McConnell wrote and sent a certified letter to Defendant
> Elias Coriz, Chairman of Defendant County, reporting the mismanagement,
> discrimination, and retaliation towards Plaintiffs from Defendant Pacheco. The letter
> also requested to be placed on the agenda at the next Defendant County board
> meeting and to be notified of its location. The letter was signed for at the post office
> on May 13, 2009. There was no response from Defendant Coriz.

*Id.* p. 8 ¶ 39.

> On May 20, 2009 Plaintiffs attended the board meeting of Defendant County and
> requested to know why they had not been placed on the agenda as per certified letter.
> Defendant Coriz stated he had just received the letter the day before.

*Id.* ¶ 40.

In response to the motions to dismiss, the Plaintiffs moved to amend their Complaint to

allege the following additional facts about the Board and Coriz. In the first proposed Amended

Complaint, Plaintiffs alleged that the Defendants, including the Board and Coriz

> harassed and intimidated Plaintiffs through malicious prosecution, defamation of
> Plaintiffs character in a public setting, violation of privacy under HUD, and
> perceived threats, causing Plaintiffs to vacate the property and causing Plaintiffs to
> be homeless.

Doc. 30, p. 2, ¶ 3. The Court finds that these are not factual allegations but, rather are conclusory

statements that cannot be considered in analyzing the motions to dismiss. *See Iqbal*, 129 S. Ct. at

1949. The Plaintiffs next allege that the Defendants, including the Board and Coriz

> were aware of the presence of mold in several buildings at Ojo Caliente and that
> these Defendants knowingly placed Plaintiffs . . . into unsafe living conditions.

Doc. 30, p. 2, ¶ 3. Plaintiffs supplemented ¶ 35 of the Original Complaint by adding the factual

allegation that

> Plaintiffs attended the [March 26, 2009 Board] meeting and made Defendant County

6

and Defendant Coriz aware of their complaints and health issues.

Doc. 30, p. 9 ¶ 42.  They also added another factual allegation regarding the March 26, 2009 Board meeting:

> Defendant Coriz, on behalf of Defendant County approved the temporary transfer of Plaintiffs into private housing until such time as a unit, 102, could be remodeled and made available to Plaintiffs.

*Id.* ¶ 43.  They complain that Coriz refused to allow McConnell to speak at the May 20 Board meeting because they were not on the agenda.  *See id.* ¶ 48.

The Plaintiffs allege that the County and Coriz "approved and sanctioned" RAHA's filing of what they considered to be a retaliatory petition for restitution of the housing unit through Pacheco in June 2009.  *Id.* at 13-14 ¶ 55.  In their proposed supplemental pleading, they added the allegations that

> photographs of the mold found inside the walls and around the baseboards of unit 110 were presented to Defendant Coriz, Defendant 'County', Defendant 'RAHA', Defendant Pacheco and Defendant Leyba at the conclusion of the RAHA Board meeting on May 28, 2009.  Positive results for toxic black mold were also sent to Defendant Coriz with the letter from Plaintiffs Physician.

Doc. 41, p. 2-3, ¶ 4.  They further added an allegation that

> On or about May 2009 Defendant Pacheco and the staff of Defendant 'RAHA' solicited from all tenants at the Ojo Caliente project statements of non support for Plaintiff James McConnell as Tenant Representative . . . in violation of HUD law which prohibits the interference of a PHA in the matters of the Tenants Association.

*Id.* p.3, ¶ 5.

**B.  Allegations regarding the Rhoades Defendants.**

Regarding Defendants Ronald Rhoades and Rhoades Environmental, the Original Complaint contained the following allegations:

> On . . . April 15, 2009, Defendant Rhoades Environmental was hired by Defendant RAHA and Angie Pacheco to take "air samples only" in response to Plaintiffs demand for mold testing in their unit.
>
> Defendant Ronald Rhoades, president of Rhoades Environmental, admitted that he was hired to get certain results and that considering the measures taken by Plaintiffs to air out and clean the environment he did not anticipate a true reading.  He then returned an extensive but completely useless report as requested by Defendant Angie Pacheco representing Defendant RAHA.

Doc. 2 p. 7, ¶¶ 36, 37.  In their first proposed Amended Complaint, the Plaintiffs corrected the date in ¶ 36 to read "April 23, 2009."  Doc. 30 p. 9, ¶ 44.  They also amended ¶ 36 in the Original Complaint to read as follows:

> Defendant Ronald Rhodes, president of Rhodes Environmental, admitted that he was hired  ["by the other side of the aisle"] to get certain results and that considering the measures taken by Plaintiffs to air out and clean the environment he did not anticipate a true reading.  Defendant Ronald Rhodes, on behalf of his company Rhodes Environmental also stated to Plaintiffs that there was "high humidity in the building which indicated a problem" and that there "was moisture in the closet wall that needed further investigation."  On or about April 29, 2009 Defendant Rhodes returned a project memorandum which mentioned neither of these conditions and ambiguously and falsely stated that the house was safe for habitation.  Plaintiffs are alleging gross errors and omissions in his inspection and reporting regarding the mold which was later proven by other means of testing to be in high volumes and highly toxic and dangerous.

Doc. 30 p. 10, ¶ 45.

### C. Amendment of the claims.

The Plaintiffs alleged violation of 42 U.S.C. § 3604(f)(3) of the Fair Housing Act and replaced the whole "Causes of Action" section of the Original Complaint with the proposed supplemental pleading filed on September 1, 2009.  In Count One, they contend that Defendants RAHA and the County

> in their capacities as governing and/or public bodies have established a governmental 'custom' to dismiss, ignore, conceal, and retaliate against residents who complain of mold in the housing complexes under their control and from which they derive benefits to the proven health detriment of past and present residents.

8

Doc. 41, p.3, ¶ 60.  Although Coriz' name is mentioned in the heading of Count One, that Count contains no statements to indicate a cause of action against him.  *See id.* ¶¶ 60-63.  The Plaintiffs further contend that Defendants Pacheco, Leyba, Martinez and Gallegos,

> acting in their capacities as individuals violated Plaintiffs' rights to accommodation of their disabilities when they lied and told Plaintiffs their houses had no mold and no history of mold issues and then placed them knowingly into a house with a history of mold which made Plaintiffs sick as they had said it would.

*Id.* ¶ 61.  The Plaintiffs further claim in Count One that

> Defendant Pacheco further violated Plaintiffs First Amendment rights by threatening them with retaliation for speaking about and publishing facts about mold in public housing units and she was assisted in these efforts by Defendant Archuletta, a Sheriff's deputy, and the Defendant Rio Arriba County Sheriff's Dept. when they attempted to force Plaintiffs to remove a sign from their yard under threat of being removed from their home by local law enforcement without proper course of law.

*Id.* ¶ 62.  The Plaintiffs contend that RACSD is liable for Archuleta's actions because it inadequately trained her.  *See id.* ¶ 63.  Count Two alleges that RAHA, Pacheco, and Leyba violated the Fair Housing Act and the Rehabilitation Act by placing the Plaintiffs in a unit that had mold.  *See id.* ¶ 65.

In Count Three, the Plaintiffs accused Defendants RAHA, the County, Coriz, Rhoades Environmental and Ronald Rhoades, plus two other Defendants, of "Personal Injury, Conspiracy and Reckless Endangerment" under state law by "causing permanent physical injury to Plaintiff McConnell and Plaintiff Tattan when they worked together to cover and conceal the pervasive nature of the toxic mold in the public housing units under their care and control and specifically in the units in which Plaintiffs lived."  *Id.* at 5-6, ¶ 68.

Plaintiffs also seek to add a new state-law count for slander and defamation against two new Defendants, Darlene Ritter and the Yale Housing Authority ("YHA") in Yale, Oklahoma, and against Defendants RAHA and Pacheco, which the Court will discuss below.  *See id.* at 6-7, ¶ 73.

9

## II.      ANALYSIS

### A.  The Board has not demonstrated entitlement to dismissal.

The Board's motion to dismiss is bare-boned and inconsistent with motions filed by other County Defendants.  For example, the Board contends that it is a "separate legal entity" from RAHA and therefore not responsible for the acts of RAHA employees, *see* Doc. 14 at 1, but RAHA, represented by a different attorney, asserts that "[RAHA] is not a legal entity separate and apart from the County of Rio Arriba," Doc. 39 at 2; that "a housing authority remains an agency or instrumentality of the city or county that created it," *id.* at 3; and that because "New Mexico requires that suits against counties be brought in the name of 'Board of County Commissioners of _____ County' (the county being sued)," filing suit against both the Board and RAHA is "redundant," *id.* at 4.

Without setting forth any of the Original Complaint's factual allegations, the Board and Coriz argue that "[a]ll of the liability conduct alleged in the Complaint is directed at RAHA employees, with the only possible exception being the sole First Amendment allegation against an unknown County of Rio Arriba Sheriff's Deputy."  Doc. 14 at 2.  They contend that the Plaintiffs have therefore failed to state a cognizable claim against them because "'a municipality cannot be held liable solely because it employs a tortfeasor.'" *Id.* (quoting *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978)).  Although the Plaintiffs filed their motion to amend, a response to the motion to dismiss alleging additional facts, and the proposed Amended Complaint that added allegations and new state-law claims before the Board and Coriz filed their reply, the Defendants did not address the additional allegations or proposed changes made in the proposed Amended Complaint and Supplement.  Nor has the Board taken issue with RAHA's characterization of its legal relationship to the Board and the County, which RAHA contends is an agency relationship.

10

Because the Plaintiffs contend that the Board "administers" RAHA, which in turn makes and carries out all the policies for the County regarding public housing with the Board's approval, and that Pacheco, RAHA's executive director, and the Board were informed of the possibility of mold and of Leyba's actions and that the Board implicitly authorized or ratified the RAHA employees' allegedly retaliatory acts, the Board is not entitled to dismissal at this juncture.   A county may be held liable for acts that it "has officially sanctioned or ordered," or for acts by its officials who have "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal quotation marks omitted).   "[W]hether a particular official has 'final policymaking authority' is a question of *state law*." *Id.* (italics in original).   And the official's actions "must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the [county's] business." *Id.* (italics in original).

> Thus, a county may be held liable for the acts of its agents or agencies if the county's
>
> policies . . . cause constitutional torts.   These policies may be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy.   A court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

*McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85 (1997) (internal quotation marks and citation omitted).   Only after proper factual development can the Court make a legal determination regarding who has "final policymaking authority . . . [under] state and local law." *Milligan-Hitt v. Bd. of Trustees*, 523 F.3d 1219, 1227 (10th Cir. 2008) (noting that the question is a legal one for the judge and not a factual one for the jury).   Surely the Board is aware of the correct legal relationship between it, RAHA, and RAHA's employees, and it may not prevail on a motion to dismiss by making unsupported conclusory statements, citing irrelevant legal authority, using "hide the ball"

tactics, and failing to address all the factual allegations in the complaint.  That part of the motion requesting dismissal of the complaint against the Board will be denied.

**B.      Coriz shall be dismissed as a party.**

There are not sufficient allegations in the Complaint or the proposed amended and supplemented pleadings, however, to support a cause of action for retaliation, personal injury, conspiracy, or reckless endangerment against Coriz.  As mentioned above, although the Plaintiffs generally accuse all of the Defendants of knowingly placing them in a unit with mold, the original and amended Complaints clarify that Leyba made the placement decisions for RAHA and that the Plaintiffs did not make Coriz or the Board aware of suspected mold or of their complaints until three months *after* their placement in the unit, at the March Board Meeting.  And the proposed amended counts allege violation of the FHA or the Rehabilitation Act because of improper placement against only RAHA, Pacheco, and Leyba.

The Complaint further states that, at the March Board meeting, "Coriz, on behalf of Defendant County approved the temporary transfer of Plaintiffs into private housing until such time as a unit, 102, could be remodeled and made available to Plaintiffs."  Doc. 30, p. 9 ¶ 43.  As a matter of law, the Plaintiffs have not stated a cognizable claim against Coriz in either his official or individual capacities, and their claims against him shall be dismissed with prejudice.

**C.  RAHA has not demonstrated entitlement to dismissal.**

As noted above, RAHA's motion to dismiss is based on its contentions that it "is not an entity subject to suit under 42 U.S.C. §1983 and Plaintiffs fail to allege any independent liability" on its part, therefore, filing a complaint against it and the Board is "redundant."  Doc. 39 at 1, 4.  For support for its first proposition - that it is not an entity subject to suit under § 1983, RAHA cites cases holding that a *state* and its agencies are not "persons" subject to suit under § 1983 and an

unpublished Tenth Circuit opinion holding that, under *Utah* state law, "no statutory or case authority support[s] a direct action against a county's subdivisions, including its jails." *White v. Utah*, No. 00-4109, 5 Fed. Appx. 852, 853, 2001 WL 201980, **1(10th Cir. Mar 01, 2001). But RAHA acknowledges that it is not an agency or instrumentality of the State; rather it is "a county housing authority" that is "an agent of the [county]" and that also is "a public body corporate" under NMSA § 3-45-5(A)[2]. By defining an entity as a "public body corporate," the New Mexico legislature expressed its intent to explain that the entity is a "unit[] of government and not [a] corporation[] or business[]." *Stansell v. New Mexico Lottery*, 146 N.M. 417, 211 P.3d 214, 216 (N.M. Ct. App. 2009). It does not necessarily follow, however, that every "public body corporate" has no authority to sue or be sued under state law or is not a "person" under § 1983.

RAHA argues that is not a "person" subject to suit under § 1983 because the New Mexico courts have found that the New Mexico Lottery, which also is a "public body corporate," is not a "person" subject to suit under the New Mexico Unfair Practices Act ("NMUPA"). But in *Stansell*, the New Mexico Court of Appeals explained that, because the NMUPA specifically "defines a 'person' to include 'natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates,'" and the Lottery, as a state "public body corporate," was a governmental unit and not a private corporation, it was not a "person" as defined by the UPA. *Stansell*, 146 N.M. 417, 211 P.3d at 216. The *Stansell* case did not address whether a New Mexico "public body corporate" that is also a county agency is a "person" under § 1983. A review of New Mexico case law indicates that it may be, however.

In *Castillo v. Santa Fe County*, the plaintiff sued both Santa Fe County and the Santa Fe

---

[2] New Mexico's Municipal Housing Law expressly defines the term "city" to include counties that create housing authorities. N.M.S.A. 1978 § 3-45-3(A) (2009).

Housing Authority ("SFHA"), "the governmental agency authorized by the County of Santa Fe to operate county-owned and publicly-funded housing within the county," under the New Mexico Tort Claims Act for negligence, alleging that SFHA employees failed to keep "the grounds of a public housing project safe from unreasonable risk of harm to its residents and invitees."  107 N.M. 204, 205, 755 P.2d 48, 49 (1988).  The trial court dismissed the cause of action against both defendants for "failure to state a claim upon which relief could be granted."  *Id.*  The New Mexico Supreme Court was asked to "only review the dismissal of the cause of action against defendant County of Santa Fe Housing Authority." *Id.*  The Supreme Court reversed the dismissal of the case against the SFHA, holding that the plaintiff "could prove that the Housing Authority was aware or should have been aware of the continuing problem of loose-running dogs and the resulting danger this condition posed for the common area of Valle Vista which the Housing Authority had the duty to maintain in a safe condition," and, therefore, the plaintiff had stated a claim against the SFHA.  *Id.* at 206-07, 755 P.2d at 50-51.  Implicit in that decision is the conclusion that county housing authorities may be separate legal entities from a county and that they may be separately sued in New Mexico.

In a subsequent case for wrongful death against a county housing authority and the county's board of commissioners, the New Mexico Supreme Court again affirmed that the housing authority could be sued under the New Mexico Tort Claims Act because "[o]ne of the purposes of the Municipal Housing Law is to impose on the Authority duties of operating and maintaining safe housing for those otherwise unable to secure it."  *Cobos v. Dona Ana County Housing Auth.*, 126 N.M. 418, 426-27, 970 P.2d 1143, 1150-51 (1998).

RAHA next argues that, even if it could be sued, it cannot be held vicariously liable for the acts of its employees.  Again, the Court must determine as a matter of state law whether Pacheco and Leyba had final decision-making authority for RAHA and/or whether the RAHA Board

approved or sanctioned their actions.  *See Seamons v. Snow,* 206 F.3d 1021, 1029 (10th Cir. 2000) (noting that, to hold an employer liable for its employee's actions under § 1983, "it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action").  Although RAHA contends that the allegations in the Original Complaint "are nothing more than *respondeat superior* allegations," Doc. 39 at 4, it does not address the allegations in the proposed amended Complaint or in the supplemental pleading or the possibility that Pacheco's and Leyba's actions may be considered to be RAHA's actions, if they had final policy-making authority.  RAHA's motion to dismiss must be denied.

In its reply brief, RAHA raises a new argument that it is not a "person" as defined by 42 U.S.C. § 3602(d) of the FHA because the definition or "person" in that statute does not include "a non-entity defendant" such as itself, and it therefore is not amenable to suit under the FHA.  There is no merit in this argument.  First, RAHA has already established that it is a "public body corporate" under New Mexico law, which certainly qualifies it as an "entity."  *See* Black's Law Dictionary (8th Ed. 2004) (defining "entity" as "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members" and defining "public entity" as "[a] governmental entity, such as a state government or one of its political subdivisions").  Further, the FHA prohibits discriminatory actions not only by "persons" as defined in the FHA, but also by "other entities."  *See* 42 U.S.C. § 3602(n) (defining a "Respondent" in a complaint brought under the FHA as "the person or other entity accused in a complaint of an unfair housing practice").  And finally, applying RAHA's argument, a county also would not a "person" amenable to suit under the FHA because it does not fit the definition of "person", but RAHA contends that *only* the county, through its Board, is amenable to suit under the FHA.  *See* § 3602(d) (defining "[p]erson" as

including "one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries"). The FHA clearly indicates that public entities may be "respondents" in both administrative and judicial actions brought under the FHA. *See* 42 U.S.C. § 3613(a) (providing that, if "a State or local agency has obtained a conciliation agreement with the consent of an aggrieved person [during the process of resolving an administrative complaint], no [private judicial] action may be filed . . . by such aggrieved person with respect to the alleged discriminatory housing practice which forms the basis for such complaint except for the purpose of enforcing the terms of such an agreement"). Other courts have also held that, because the FHA "extends generally to dwellings provided in whole or in part with the aid of Federal monies," it "appl[ies] to" public housing authorities. *Cason v. Rochester Housing Auth.*, 748 F. Supp. 1002, 1006 (W.D.N.Y. 1990); *Garcia v. Wash. County Dep't of Housing Serv.*, No. CV 05-1780-MO, 2006 WL 897984, *3 (D. Or. Mar. 31, 2006) (noting that "relevant case law and statutory provisions . . . suggest private rights of action against public housing agencies under the FHA and RA" and that "there is no language to the contrary, in the FHA or case law, that would suggest public housing agencies are exempt from suit when they engage in discriminatory housing practices"); *United States v. Housing Auth. of City of Chickasaw*, 504 F. Supp. 716, 726 (D.C. Ala. 1980) (holding that a city housing authority was a 'person' within the meaning of 42 U.S.C. § 3602(d)).

**D. The Plaintiffs have stated a claim for violation of First-Amendment rights against the Rio Arriba Sheriff's Department and Archuleta.**

Rio Arriba County Sheriff's Department's ("RACSD") motion to dismiss is based upon a single sentence of legal argument contending that it must be dismissed because it "is not a separate

16

legal entity or a 'person' under § 1983 and, therefore, cannot be sued for damages under that section." Doc. 14 at 2.  In support of this proposition, RACSD, like RAHA, cites only to cases holding that "neither a *State* nor its officials acting in their official capacities are "persons" under § 1983." *Id.* (italics added).  RACSD cites no legal authority for the proposition that a county sheriff's department is a state, as opposed to a county, agency in New Mexico and nothing to support its assertion that it "is not a separate legal entity" from the County that cannot be sued under § 1983.  The RACSD has flatly failed to support its motion to dismiss with relevant legal authority.

Further, the Plaintiffs make the following allegations regarding the RACSD in the supplemental pleading:

> Defendant Pacheco further violated Plaintiffs First Amendment rights by threatening them with retaliation for speaking about and publishing facts about mold in public housing units and she was assisted in these efforts by Defendant Archuletta, a Sheriff's deputy, and the Defendant Rio Arriba County Sheriff's Dept. when they attempted to force Plaintiffs to remove a sign from their yard under threat of being removed from their home by local law enforcement without proper course of law.

Doc. 41 at 4, ¶ 62.

> Defendant 'RACSD' is liable for the actions of it's [sic] deputies if there has been inadequate training and Defendant Archuletta's statements make it clear that she lacked training when she threatened to remove Plaintiffs from their home without proper course of law and insisted that Plaintiffs must obey orders simply because they came from Defendant 'County.'

*Id.* ¶ 63.  RACSD has not addressed these allegations and claims in their reply to the Plaintiffs' response to the motion to dismiss.

The RACSD did, however, object to the amendment of the Complaint in their response to the motion to amend.  There, they contend that the Plaintiffs should not be allowed to amend their Complaint regarding the actions of Deputy Archuleta because their proposed amendments fail to state a cognizable claim against her, and, therefore, against the RACSD.  As they point out, the

Plaintiffs allege that Archuleta came to their property and "ordered them to remove a sign from their porch which read 'Toxic Mold Home.'" Doc. 30 at 12, ¶ 52.  The Plaintiffs refused to do so, citing their First-Amendment rights to free speech.  *See id.*  Archuleta then "threatened to remove them from the home if they did not comply."  *Id.*  The Plaintiffs refused to obey her orders and argued with her.  *See id.*  Archuleta then left, saying "she would go see what papers there were on them."  *Id*.

The RACSD contends that the Plaintiffs cannot state a claim for violation of their First-Amendment rights because the "proposed allegations as asserted against Deputy Archuleta do not amount to a constitutional deprivation as mere verbal threats by a police officer are not a basis for a Section 1983 claim."  Doc. 35 at 2.  It is true that threats alone will not support a claim for violation of the *Eighth Amendment's* prohibition against cruel and unusual punishment, which was the issue addressed in the cases the RACSD cites in support of its argument.  The test for a First-Amendment violation is different, however.  The Tenth Circuit has held that with respect to claims for retaliation in violation of the First Amendment, a claim is stated if three factors are satisfied: (I) that a plaintiff  "was engaged in constitutionally protected activity;" (ii) that the defendant's response to that activity "would chill a person of ordinary firmness from engaging in that activity;" and (iii) that the defendant's conduct "was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks omitted).  "The focus . . . is upon whether *a person of ordinary firmness* would be chilled, rather than whether the particular plaintiff is chilled."  *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (italics in original).  Further, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."  *Worrell*, 219 F.3d

18

at 1212 (internal quotation marks omitted).  Accepting the Plaintiffs' allegations as true for purposes of analyzing whether they have stated a claim for retaliation in violation of their First-Amendment rights, the Court concludes that the threat of being removed from one's home by a police officer if one does not remove a sign expressing one's belief and discontent would chill a person of ordinary firmness from continuing to display the sign.  The RACSD has provided no reasoned basis for dismissing claims against it or against Archuleta.

**E.    The Plaintiffs have failed to state claims against Rhoades and Rhoades Environmental.**

As noted, *supra*, the Complaint and proposed amendments state that RAHA (and not the Plaintiffs) hired Rhoades and his company to take "air samples only" of the air in the Plaintiffs' unit; that Rhoades stated he did not believe that the tests would show an accurate picture of mold issues; that Rhoades made comments to the Plaintiffs indicating the need for further inspections that he had not been hired to do; that Rhoades issued a report regarding the results of the air-sample tests he was hired to do; that his report regarding the air samples did not mention other potential issues not covered by his tests, and that the Plaintiffs believe that the report was "useless" because it allegedly contained errors and omissions.  The Rhoades Defendants contend that the Plaintiffs have failed "to allege facts showing when or how Rhoades, by allegedly preparing a 'useless' report regarding mold readings, caused them injury or violated their rights," and have therefore failed to state a cognizable claim against them.  Doc. 58 at 3.  The Court agrees.  The Plaintiffs have failed to allege facts showing that Rhoades owed them a duty either by contract or under tort-law principles, the breach of which caused injury to the Plaintiffs.  *See Iqbal*, 129 S. Ct. at 1949-51.  All claims against Rhoades and Rhoades Environmental shall be dismissed with prejudice.

**F.  The motions to amend should be granted in part and denied in part.**

**1.  The Plaintiffs may add more allegations against certain Defendants**.

The Court has reviewed the proposed Amended Complaint and the supplemental pleading and concludes that the Plaintiffs may amend their Complaint to allege the additional facts contained in documents 30 and 41 regarding the County/Board, RAHA, the RACSD, Pacheco, and Leyba; and to name Archuleta as the deputy who allegedly tried to force them to remove the sign from in front of their unit and to add additional facts about her.

**2.  The Plaintiffs may not amend their complaint to add Martinez or Gallegos as Defendants.**

The Plaintiffs allege that Tony Martinez is the maintenance supervisor for RAHA and that Rachel Gallegos is a RAHA employee in the proposed Amended Complaint.  Doc. 30 at ¶¶ 17, 18. They allege they told Gallegos in October 2008 that both Tattan and McConnell were disabled and sensitive to mold and that they had been "at odds" with Darlene Ritter, who was the Executive Director of the Yale Housing Authority in Yale, Oklahoma (where they previously lived), "for standing up for Tenants rights to clean air systems in their public housing units."  *Id.* at 5, ¶¶ 23, 25. They allege that Martinez looked at some spots above the shower area in their unit in February 2009, wiped the area with his thumb, and expressed his opinion that the spots were "dirty spots, not mold." *Id.* at 7, ¶ 36.  On March 27, 2009, Gallegos told the Plaintiffs that a meeting of RAHA and the Board "was underway and gave the location," and the Plaintiffs attended the meeting.  *Id.* at 9, ¶ 42.

The Plaintiffs contend that Martinez and Gallegos are liable to them under state law in Count Three for personal injury, conspiracy, or reckless endangerment by "work[ing] together to cover and conceal the pervasive nature of the toxic mold in the public housing units under their care and control and specifically in the units in which Plaintiffs lived."  Doc. 41 at 6, ¶ 68.  The Court concludes that the underlying factual allegations do not support such claims against either Martinez

or Gallegos, *see Iqbal*, 129 S. Ct. at 1949-51, and the Plaintiffs therefore may not amend their

Complaint to add them as Defendants because it would be futile to do so, *see Anderson v. Suiters*,

499 F.3d 1228, 1238 (10th Cir. 2007) ("A proposed amendment is futile if the complaint, as

amended, would be subject to dismissal.") (internal quotation marks omitted).

> **3.  The Plaintiffs may not amend their Complaint to add claims against Ritter or the YHA.**

As noted, *supra*, the proposed Amended Complaint states that Ritter is the Executive

Director of the YHA, which is administered by the city of Yale, Oklahoma.  *See* Doc. 30 at 4, ¶¶ 20-

21. They state they were "at odds" with Ritter when they lived in Oklahoma "for standing up for

Tenants rights to clean air systems in their public housing units."  *Id.* at 5, ¶ 23.

The Plaintiffs further allege that Ritter, apparently over the phone,

> maliciously defamed Plaintiffs characters when she falsely stated as fact to
> Defendant Pacheco on or about May 15, 2009 that Plaintiffs had engaged in
> threatening and harassing behavior while living at Defendant 'YHA' in Oklahoma.
> These accusations were made against Plaintiffs while living at Defendant 'YHA' in
> retaliation for Plaintiffs exertion of their rights to clean heating and air systems and
> informing other tenants, and specifically a woman who had just had a lung transplant
> and was the mother of the local police chief, that the heating/air ducts and systems
> were in very dangerous and bad condition.   These accusations were never
> substantiated and therefore could not be stated as fact from Defendant 'YHA' or
> their Director Defendant Darlene Ritter.   These statements were false and were
> solicited by Defendant Pacheco for the intended purpose to do harm and were
> repeated by Defendant Pacheco in a public meeting on May 28, 2009 as though they
> were factual and without stating the real reason that the accusations were made in the
> first instance.

Doc. 41 at 7, ¶ 73.

RAHA and Pacheco state that they have no objections to the amendment of the Complaint

against them.  *See* Doc. 31 at 2.  But their argument that the Plaintiffs may not add Ritter and YHA

as defendants because "a citizen has no fundamental privacy rights absent government action" and

the Plaintiffs have not alleged that Ritter or the YHA are governmental agencies, is not well taken. Also not well taken is their argument that the "claims that Ms. Ritter and YHA defamed Plaintiffs do not involve any question of law or fact common to all defendants" and therefore violate Rule 20 of the Federal Rules of Civil Procedure.

Nevertheless, because the Plaintiffs are proceeding *in forma pauperis* ("IFP") the Court should ensure that their proposed amended complaint states a claim against Ritter and YHA before allowing them to amend their Complaint and costing the taxpayers money to serve the new defendants. *See* 28 U.S.C. § 1915(e)(2)(B); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissal of claims brought by persons proceeding IFP is mandatory "at any time" if the plaintiff fails to state a claim); *Trujillo*, 465 F.3d at 1217 (noting that a "district court may consider personal jurisdiction and venue *sua sponte* "when the defense is obvious from the face of the complaint and no further factual record is required to be developed").

The proposed amended complaint fails to state a claim against the YHA under the applicable standard. *See Iqbal*, 129 S. Ct. at 1949-51. And because Ritter resides in Oklahoma and the Plaintiffs' only allegation is that she allegedly had a telephone conversation with a New Mexico RAHA employee in which Ritter defamed the Plaintiffs, as a matter of law that activity alone is not an act by which she may be said to have "purposefully avail[ed] [herself] of the privilege of conducting activities within [New Mexico]," and this Court therefore has no authority to bring her into this court in order to assert personal jurisdiction over her. *See Trujillo*, 465 F.3d at 1220. The Plaintiffs may not amend their complaint to add any claims against Ritter or the YHD or to add them as defendants because such amendment would be futile.

**NOW, THEREFORE, IT IS ORDERED** that *Defendants Board of County Commissioners for the County of Rio Arriba, Rio Arriba County Sheriff's Department, and Elias Coriz's Motion to*

22

*Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted* (Doc. 14) is GRANTED as to Defendant Coriz but DENIED as to Defendants Board and RACSD; that *Rio Arriba County Housing Authority's Motion to Dismiss* (Doc. 39) is DENIED; that *Rhoades Environmental and Ronald K Rhoades' Motion to Dismiss* (Doc. 58) is GRANTED; that the Plaintiffs' *Motion to Amend Original Complaint and to Submit Supplemental Pleadings* (Doc. 23) is GRANTED IN PART and DENIED IN PART; and that the Plaintiffs' *Motion to Make Changes to Proposed Amendments and Supplemental Pleadings* (Doc. 41) is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that all claims against Defendants Coriz, Rhoades, and Rhoades Environmental are DISMISSED WITH PREJUDICE.

**IT IS FURTHER ORDERED** that, within five days of the filing of this Order, the Plaintiffs shall file an Amended Complaint as permitted, *supra*, and incorporate all of their factual allegations and causes of action into a single document, and which document does not name Coriz, Rhoades, Rhoades Environmental, Martinez, Gallegos, Ritter, or the YHA as Defendants or allege causes of action against them.

**SO ORDERED** this 9th day of December, 2009, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge